# EXHIBIT A

## IN THE SEVENTH JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
## CHANCERY DIVISION

OB·GYN ASSOCIATES OF )
OAK RIDGE, P.C., and )
and TIMOTHY D. GOWDER, M.D., )
)
    Plaintiffs, )
)
v. )   No.: **16CH8036**
)
THE LINCOLN NATIONAL LIFE )
INSURANCE COMPANY, )
)
    Defendant. )

2016 MAY 19 PM 2 55
STEVE R. QUEENER
CLERK AND MASTER
FILED

**To The Above-Named Defendant: The Lincoln National Life Insurance Company**
    **c/o Commissioner of TN Dept. of Commerce & Insurance**
    **(T.C.A. §§ 56-2-501, et seq.)**
    **Attn.: Service of Process**
    **500 James Robertson Parkway**
    **David Crockett Tower**
    **Nashville, TN 37243-0565**

    You are hereby summoned and required to serve upon ROBERT W. KNOLTON, Plaintiff's Attorney, whose address is P.O. Box 4459, Oak Ridge, Tennessee, 37831, an Answer to the Complaint/Warrant herewith served upon you within thirty (30) days after service of this Summons and Complaint/Warrant upon you, exclusive of the day of service. If you fail to do so, Judgment by default can be taken against you for the relief demanded in the Complaint/Warrant.

    **ISSUED** and attested this **19** day of **May**_____, 2016.

        _Steve R. Queener_
        **CLERK**

        _Tammy Hazel_
        **DEPUTY CLERK**

STATE OF TENNESSEE, ANDERSON COUNTY
I hereby certify this document to be a
true and exact copy of the original
on file in my office.
This **19** day of **May**_____, 20**16**
STEVE R. QUEENER, CLERK & MASTER
BY: _Tammy Hazel_
Deputy Clerk

CHANCERY COURT
OFFICIAL SEAL
ANDERSON COUNTY, TN

# NOTICE

**To The Party Defendant: Lincoln National Life Insurance Company**

Tennessee law provides a **Ten Thousand Dollar ($10,000.00) personal property exemption** from execution or seizure to satisfy a Judgment. If a Judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the Judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

# SERVICE INFORMATION

**TO THE PROCESS SERVER:**       **Defendant, The Lincoln National Life Insurance Company
c/o Commissioner of TN Dept. of Commerce & Insurance
Serve Defendant per attached Affidavit at:
Lincoln National Life Insurance Company
1300 South Clinton Street
Fort Wayne, IN 46802**

# RETURN

I received this Summons on the _____ day of _____, 2016.

I hereby certify that on the _____ day of _____, 2016, I:

[  ] **served** this Summons and a Complaint/Warrant on Defendant
_____, in the following manner:

_____

[  ] **failed** to serve this Summons within thirty (30) days after its issuance because:

_____

_____
**PROCESS SERVER**

## IN THE SEVENTH JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
## CHANCERY DIVISION

OB-GYN ASSOCIATES OF )
OAK RIDGE, P.C., and )
and TIMOTHY D. GOWDER, M.D., )
                       )
       Plaintiffs, )
                       )
                       )
v. )      No.: 16Ch8036
                       )
THE LINCOLN NATIONAL LIFE )
INSURANCE COMPANY, )
                       )
       Defendant. )

2016 MAY 19 PM 2 55

STEVE R. QUEENER
CLERK AND MASTER

FILED

### AFFIDAVIT OF COUNSEL

STATE OF TENNESSEE

COUNTY OF ANDERSON

     I, Robert W. Knolton, upon first being duly sworn, hereby affirms:

1.     That I am counsel for the Plaintiffs, in the above styled litigation.

2.     That to the best of my knowledge and information, the last known address for service

of process upon the Defendant is:  Lincoln National Life Insurance Company, 1300 South Clinton

Street, Fort Wayne, Indiana 46802.

     FURTHER AFFIANT SAYETH NOT.

                                     ROBERT W. KNOLTON

     Sworn to and subscribed before me, the undersigned authority, this the _18th_ day

of ___May___, 2016.

                              Notary Public

                              My commission expires: _6/6/2017_

# IN THE SEVENTH JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
## CHANCERY DIVISION

OB-GYN ASSOCIATES OF )
OAK RIDGE, P.C., and )
and TIMOTHY D. GOWDER, M.D., )
     )
    **Plaintiffs,** )
     )
v. )     No.: 16CH8036
     )
THE LINCOLN NATIONAL LIFE )
INSURANCE COMPANY, )
     )
    **Defendant.** )

2016 MAY 19 PM 2 54 FILED STEVE R. QUEENER CLERK AND MASTER

## COMPLAINT FOR DECLARATORY JUDGMENT
## FOR EQUITABLE RELIEF OF NON-LAPSE
## AND/OR REINSTATEMENT OF INSURANCE POLICY

Come now the Plaintiffs, Ob-Gyn Associates of Oak Ridge, P.C. (hereinafter **"OBGYN"**)

and Timothy D. Gowder, M.D. (hereinafter **"Dr. Gowder"**) by and through counsel, and pursuant

to T.C.A. § 29-14-101, *et seq.*, and T.R.Civ.P. § 57, sues the Defendant, The Lincoln National Life

Insurance Company, an affiliate of Lincoln National Corporation (hereinafter **"Lincoln"**) for the

equitable relief hereinafter described:

    1.    The Plaintiff, **OBGYN** is a professional association of medical doctors, practicing

in the specialty of obstetrics and gynecology, and are duly qualified as a professional medical

practice under the statutes of the state of Tennessee, maintaining their principle practice location in

Oak Ridge, Anderson County, Tennessee.

2.     That **Dr. Gowder** is a resident citizen of Anderson County, Tennessee, and at all times hereinafter stated, was an "active" member of **OBGYN**, until his retirement in 2007.

3.     That Defendant **Lincoln** is a foreign life insurance company domesticated in the state of New Hampshire, with corporate administrative offices located in the state of Indiana, and is duly qualified to do business in the state of Tennessee; that **Lincoln** engages in the sale of life insurance policies in this state through it and the affiliates of Lincoln National Corporation. Pursuant to the provisions of T.C.A. § 56-2-501, *et seq.,* **Lincoln** may be served with process through the Insurance Commissioner's office of the state of Tennessee, at its administrative offices located at: Lincoln National Life Insurance Company, 1300 South Clinton Street, Fort Wayne, Indiana 46802.

4.     Jurisdiction in this Honorable Court is pursuant to T.C.A. § 16-11-103 and T.C.A. § 29-14-101, *et. seq.*; that there exists a justiciable controversy between the parties under the policy of insurance which is the subject of this action, and issued by **Lincoln**. Venue in this county is appropriate under T.C.A. § 56-2-501, *et seq.*

### FACTUAL ALLEGATIONS AND HISTORY OF ISSUANCE OF POLICY INSURING LIFE OF DR. GOWDER

5.     That on July 9, 1996, **Lincoln** through one of its agents in this state, solicited and issued a life insurance policy insuring the life of **Dr. Gowder**, in the specified amount of $500,000.00. A duplicate copy of policy No. 506013141 is attached to this Complaint and marked as Exhibit "A." (Such copy was sent to Plaintiffs' counsel by letter identified as Exhibit "F" to this Complaint.)

2

6. That at the time of the issuance of the aforestated policy, **Dr. Gowder** was shown on page 1 of the policy as the "Insured." Pursuant to the first sentence of the Ownership of Policy section of the General Provisions on page 8 of the policy, the Insured was the "Owner" of the policy unless otherwise provided. No such provision has been indicated in the copy of the policy sent by **Lincoln**, and, therefore, **Dr. Gowder** was also the Owner of the policy, with a residence mailing address of 15 Presidential Drive, Oak Ridge, TN 37830.

7. The policy issued by **Lincoln** on the life of **Dr. Gowder** was described as a flexible variable universal life policy, upon which the premiums, policy values and death benefits might vary, depending on the investment experience of the funding option. On all correspondence from **Lincoln** regarding the aforestated policy, **Lincoln** incorrectly showed the initial account name, "Ob-Gyn Associates of Oak Ridge Profit Sharing of Oak Ridge Pension Trust," as the "Owner" of the policy.

8. The option made available to the Owner and the Insured, and chosen by him was an investment fund created and managed by **Lincoln** and/or its affiliates. The premiums on the subject policy were paid monthly by the investment fund account, *i.e.*, debited by **Lincoln** from the fund account, but depending on how the fund market performed, any negative amount of premiums would be immediately billed to the "Owner"; if sufficient payment was not received for the "negative" amount shown in the investment account within a certain period, the policy was said to have "lapsed."

9. The aforestated method of premium payment worked, without any problems for approximately 18 years, with untold thousands of dollars being paid in premiums on the policy issued to **Dr. Gowder** through the investment fund set up and managed by **Lincoln** and/or its affiliate. On occasion while **Dr. Gowder** was the Insured, and while in the "active" practice with

3

**OBGYN**, he would receive notice of a shortage of premium as the "Owner," and would pay any premium due that had not been paid by the investment fund.

      10.     In 2007, **Dr. Gowder** retired from his "active" ob-gyn practice for health reasons. At the time of his retirement, and insofar as he was aware, the status of the subject life policy was fully "paid-up" as to premiums being paid by the investment fund, and without any further premiums anticipated to be paid on the life policy.

      11.     Some time in 2009, **OBGYN** "rolled over" the original Trust Plan into a new plan, designated as "Obstetric and Gynecologic Associates of Oak Ridge, P.C., Safe Harbor 401(K) Plan," however, did not formally notify the investment fund option managed by **Lincoln** of a change in the name of the investment plan. Nevertheless, the investment plan option managed by **Lincoln**, kept current all premium payments on the life policies issued to the members of **OBGYN** without any problem through the debiting process of **Lincoln** from the investment fund, until a claimed problem of a "negative" amount was asserted by **Lincoln** on the policy insuring **Dr. Gowder's** life in 2014.

      12.     **Lincoln**, after the change in the investment plan title, continued to manage the investment fund, of which the subject policy was an "asset," however, continued to show the original investment plan as the "Owner" of the policy, and forwarded all letters and notices to the incorrect "Owner," at the office address of **OBGYN**. By letter dated July 10, 2014, **Lincoln** sent a notice of additional premium due on **Dr. Gowder's** policy, to the incorrect "Owner" of the policy. **Dr. Gowder** did not receive that letter, nor was a copy forwarded to him. (Copy of letter attached as Exhibit "B.")

4

13.    Without receiving a response to the letter of July 10, 2014, either from the correct Owner and Insured, **Dr. Gowder**, or from **OBGYN**, **Lincoln** forwarded a letter dated August 9, 2014, to the incorrect "Owner," advising that the policy would lapse on September 13, 2014, unless the required payment was made.  (Copy of letter attached as Exhibit "C.")  **Dr. Gowder** did not receive a copy of that letter, nor was a copy sent to him.

14.    By letter dated September 16, 2014, again sent to the incorrect "Owner," **Lincoln** advised that the policy on **Dr. Gowder's** life had "lapsed" for non-payment of premium due.  (Copy of letter attached as Exhibit "D.")  **Dr. Gowder** did not receive a copy of the letter, however, became aware of the letter during the latter part of September 2014, at which time he immediately called and talked to a representative of **Lincoln**.  The **Lincoln** representative actively sought money from **Dr. Gowder** by telling him that if the unpaid premium was forwarded, the policy would remain in force. **Dr. Gowder** issued his check #5712, dated October 1, 2014, in the amount of $8,540.18, payable to **Lincoln**, forwarding it on the date of the telephone conversation with the **Lincoln** representative, which check was received by **Lincoln** and processed through its bank.  **Lincoln**, thereafter, issued and forwarded its check in the same amount to **Dr. Gowder**, as the Insured, to his residence address for the <u>first</u> time, advising that the policy had been terminated, and that the check was a "refund" of the payment of the premium amount that he had paid.  This was the first mailing that **Dr. Gowder** had received directly from **Lincoln**.  The check from **Lincoln** was not "negotiated" by **Dr. Gowder**, and **Lincoln** was advised of the non-acceptance of the attempted refund by letter of his counsel dated November 2, 2014.  (Copy attached as Exhibit "E.")

5

15. After **Dr. Gowder's** attorney made numerous attempts to obtain information and sought to have **Lincoln** continue or reinstate the policy, a letter was received by **Dr. Gowder's** attorney from **Lincoln** dated August 7, 2015, wherein **Lincoln** continued to refuse to keep the policy in force, but suggested that an application for reinstatement signed by the "Owner" <u>and</u> the Insured would be considered. (Copy of letter attached as Exhibit "F.")

16. Pursuant to the letter received from **Lincoln**, **OBGYN** and **Dr. Gowder** completed and signed the reinstatement application documents, and forwarded same to **Lincoln**, along with **OBGYN's** check for the specified premium advance, by letter of **Dr. Gowder's** counsel dated January 14, 2016. (Copy of letter attached as Exhibit "G.")

17. The reinstatement application was denied by **Lincoln** by letter to **Dr. Gowder**, as the Insured, dated February 24, 2016, indicating that, for current health reasons, he did not meet underwriting guidelines (copy of letter attached as Exhibit "H"). A separate letter dated February 29, 2016, was sent by **Lincoln** to the incorrect "Owner" of the policy, advising of the denial of the reinstatement application ((copy of letter attached as Exhibit "I"). **OBGYN** did not receive the letter from **Lincoln**, although it was furnished a copy of same by **Dr. Gowder's** attorney.

## BASIS FOR EQUITABLE
## RELIEF SOUGHT

18. The Plaintiffs would show that through no fault of **Dr. Gowder**, the Insured and the Owner of the subject life policy, he did not receive any notice of a premium being due, or of the lapse or termination of the policy for non-payment of premiums, until after the effective termination date of September 13, 2014. Upon becoming aware of the situation, he immediately contacted

6

**Lincoln**, and was told by its representative that upon payment of the premium due, the policy would continue in force. **Dr. Gowder** immediately forwarded the premium due, which check was accepted and processed by **Lincoln**, however, **Lincoln** later issued its check and sent it to **Dr. Gowder** as a refund of the premium he had forwarded, inasmuch as the policy had been "declared" terminated by **Lincoln**. Such action of **Lincoln** was contra to the representation made by its agent, and constitutes a misleading representation made to **Dr. Gowder** by **Lincoln's** representative, to his detriment. That the aforestated representative of **Lincoln** was the agent, servant and/or employee, who was at all times herein mentioned, acting within the course and scope of her agency or employment with **Lincoln**.

19. The Plaintiffs would further show to the Court that the aforestated "notices" of premium due, "lapse" dates, and termination of the subject policy, were not sent to the proper "Owner" of the policy; under the circumstances **Lincoln** should have known that the proper "Owner" was **Dr. Gowder**, for the reason that the policy itself, which was drafted by **Lincoln**, provided that the Insured, **Dr. Gowder**, was the Owner of the policy, without any document providing otherwise. The Plaintiffs would show that no such documents were provided to them by **Lincoln,** when a copy of the policy was sent to counsel for **Dr. Gowder.**

20. The Plaintiffs would also show that "notices" sent by **Lincoln** were not sent to the Owner, nor did such notices fully conform to the informational or time requirements set forth in T.C.A. § 56-7-2303. **Dr. Gowder**, the Insured and Owner, did not become aware of the attempted forfeiture of the subject life policy by **Lincoln,** until after the asserted "lapse" or "termination" date.

7

21. The Plaintiffs aver that **Lincoln's** representative acted as an agent for **Lincoln** when she solicited monies from **Dr. Gowder** during the telephone conversation with **Dr. Gowder** on October 1, 2014, and therefore, bound **Lincoln** to representations made by her, including that **Dr. Gowder's** life insurance policy would remain in force if the unpaid premium was paid. **Lincoln** negotiated **Dr. Gowder's** check for the premium due when it processed **Dr. Gowder's** check through its bank. **Lincoln's** denial of **Dr. Gowder's** efforts to keep the policy in force pursuant to the representations made by its agent, was arbitrary, capricious, and in bad faith.

22. The Plaintiffs further aver that under the aforementioned circumstances, **Dr. Gowder**, had a valid life insurance policy to protect his family, issued on his life by **Lincoln**; that premiums were regularly paid for over 18 years; that the policy was terminated without his knowledge, and without fault on his part, and now, due to his current health condition, **Lincoln** has declared him uninsurable, when it knew that its denial of reinstatement would preclude forever **Dr. Gowder** having any possibility of procuring other life insurance; that it denied reinstatement in order to wrongfully avoid its duty to pay benefits to the family of **Dr. Gowder** upon his death.

WHEREFORE, premises considered, the Plaintiffs pray:

1. **That process issue and be served upon the Defendant through the Commissioner of Insurance for the state of Tennessee, requiring it to answer this Complaint for declaratory judgment of equitable relief, but not under oath, its oath to the Complaint being expressly waived.**

2. **That at the hearing in this cause, Plaintiffs be granted judgment in their favor, and that an adjudication be had that the subject life policy issued by Lincoln shall remain in full force and effect, or alternatively, that the Defendant be ordered to reinstate such policy and to remain in full force and effect upon Dr. Gowder's life, as long as premiums are paid when due.**

3. **That the costs of this action be adjudicated against the Defendant, and for such other further and general relief to which the Plaintiff may be entitled.**

8

Respectfully submitted this ___19___ day of May, 2016.

ROBERT W. KNOLTON (BPR #002564)
STANTON A. FEARS (BPR #034229)
Attorney for Plaintiffs
**KRAMER RAYSON LLP**
Post Office Box 4459
Oak Ridge, TN  37831-4459

9

# COST BOND

We hereby acknowledge ourselves as sureties for all costs, taxes, and damages of this

cause, in accordance with Tennessee Code Annotated § 20-12-120, not to exceed Five Hundred

Dollars ($500.00).

**OB-GYN ASSOCIATES OF OAK RIDGE**

By: _____ , *Attorney*
       Principal

**TIMOTHY D. GOWDER**

By: _____ *Attorney*
       Principal

**KRAMER RAYSON LLP**

BY: _____
       ROBERT W. KNOLTON
       Surety

10

# Exhibit "A"

**Jefferson Pilot Financial Insurance Company,** One Granite Place, P.O. Box 515, Concord, New Hampshire 03302

Jefferson Pilot Financial Insurance Company (A stock company, herein called the Company), will pay the Death Benefit specified on page 6 to the Beneficiary on receipt of due proof of the Insured's death, subject to the provisions of this and the following pages, all of which are a part of this policy.

This is a Flexible Premium Variable Life Insurance Policy. The Specified Amount may be increased or decreased by the Owner. Net Premiums will be allocated to the General Account or to one or more divisions of JPF Separate Account A (herein called Separate Account A) as determined by the Owner.

**THE POLICY'S ACCUMULATION VALUE IN EACH DIVISION OF SEPARATE ACCOUNT A IS BASED ON THE INVESTMENT EXPERIENCE OF THAT DIVISION AND MAY INCREASE OR DECREASE DAILY. THE ACCUMULATION VALUE IS NOT GUARANTEED AS TO DOLLAR AMOUNT.**

The policy's accumulation value in the General Account will earn interest daily at a minimum guaranteed effective rate of 4 1/2%. Interest in excess of the guaranteed rate may be applied in the calculation of the accumulation value at such increased rates as the Company may determine.

**THE AMOUNT OF DEATH BENEFIT OR THE DURATION OF THE DEATH BENEFIT MAY VARY UNDER THE CONDITIONS DESCRIBED ON PAGES 6 AND 7.**

This policy is a legal contract between the Owner and Jefferson Pilot Financial Insurance Company.

### READ YOUR POLICY CAREFULLY

**RIGHT TO CANCEL** - Please examine this policy carefully. The Owner may cancel this policy by returning it to Jefferson Pilot Financial Insurance Company or to the agent through whom it was purchased within 10 days after the date the Owner receives the policy, within 45 days of the date of the execution of the application for insurance, or within 10 days after mailing or personal delivery of a Notice of the Right of Withdrawal, whichever is later. If the policy is returned, it will be deemed void from the beginning and any premium paid for it will be refunded within 7 days.

Executed for the Company at its Home Office in Concord, New Hampshire, as of the policy date.

Chief Executive Officer                              Secretary

Insured:  GOWDER,TIMOTHY D
Policy Number:  506013141

Flexible Premium Variable Life Insurance Policy. Flexible Premiums Payable
Until the Maturity Date or Until Prior Death. Adjustable Death Benefit.
Insurance Payable at Death. Some Benefits Reflect Investment Results.
Additional Benefits, if any, as indicated on Page 3.
Non-Participating. No Dividends.

# GUIDE TO POLICY PROVISIONS

| | Page |
|---|---|
| Administrative Charges | 3 |
| Age at Issue | 3 |
| Beneficiary | 3 |
| Death Benefit Option | 3 |
| Death Benefit Provisions: | |
| Death Benefit | 6 |
| Changes in Existing Insurance | |
| Coverage | 7 |
| Change of Maturity Date | 7 |
| General Provisions: | |
| Contract | 8 |
| Ownership | 8 |
| Incontestability | 8 |
| Suicide | 8 |
| Misstatement of Age | 8 |
| Beneficiary | 9 |
| Assignment | 9 |
| Proceeds | 9 |
| Payment of Proceeds | 9 |
| Postponement of Payments | 9 |
| Age | 10 |
| Modification | 10 |
| Policy Date | 10 |
| Effective Date of Coverage | 10 |
| Termination | 10 |
| Maturity Date | 10 |
| Annual Report | 10 |
| Non-Participating | 10 |
| Guaranteed Monthly Cost of | |
| Insurance Rates | 4 |
| Initial Specified Amount | 3 |
| Insured | 3 |
| Nonforfeiture Values: | |
| Accumulation Value | 14 |
| Cash Value | 14 |
| Surrender Charge | 14 |
| Separate Account Accumulation | |
| Values | 14 |
| Net Investment Factor | 15 |

| | Page |
|---|---|
| Nonforfeiture Values (cont.): | |
| General Account Accumulation | |
| Value | 15 |
| General Account Interest Rate | 15 |
| Monthly Deduction | 16 |
| Cost of Insurance | 16 |
| Cost of Insurance Rates | 16 |
| Insufficient Cash Value | 16 |
| Continuation of Insurance | 16 |
| Surrender | 16 |
| Withdrawal of Cash Value | |
| (Withdrawal) | 17 |
| Basis of Computations | 17 |
| Illustration of Benefits and | |
| Values | 17 |
| Owner | 3 |
| Policy Date | 3 |
| Policy Loans: | |
| Policy Loans | 11 |
| Policy Loan Interest | 11 |
| Debt | 11 |
| Policy Loan Repayment | 11 |
| Premium Provisions: | |
| Premium Payments | 5 |
| Planned Periodic Premiums | 5 |
| Net Premiums | 5 |
| Allocation of Net Premiums | 5 |
| Unscheduled Premiums | 5 |
| Grace Period | 5 |
| Reinstatement | 6 |
| Separate Account Provisions: | |
| Separate Account | 12 |
| Divisions | 12 |
| Transfers | 12,13 |
| Addition, Deletion, or | |
| Substitution of Investments | 13 |
| Settlement Options | 18,19 |
| Right to Cancel | 1 |

A copy of the application will be found after page 18. Any other benefit agreements will also be found after page 18.

## PREMIUM PROVISIONS

**Premium Payments** - An initial premium is due and payable on the policy date. The initial premium must be large enough, after the deduction of the premium expense charge, to cover monthly deductions for at least three months. All premiums are payable at the Home Office of the Company or to an authorized agent of the Company in exchange for a receipt. This receipt must be signed by an elected officer of the Company and countersigned by such agent. The Company will not accept a premium payment less than $25.

**Planned Periodic Premium and Premium Frequency** - The Planned Periodic Premium and Premium Frequency, as shown on page 3, are selected by the Owner. The Planned Periodic Premium is the amount of premium the Owner intends to pay. The Premium Frequency is how often the Owner intends to pay the Planned Periodic Premium. Payment of the Planned Periodic Premium is at the option of the Owner.

The Company will send Planned Periodic Premium payment reminder notices. If the mode of premium payment is preauthorized check, government allotment or payroll deduction, notice of any Planned Periodic Premium due will not be sent.

Changes in Premium Frequency and increases or decreases in the Planned Periodic Premium may be made by the Owner by providing written notification to the Company. The Company reserves the right to limit the amount of any increase.

**Net Premium** - The net premium is equal to the premium paid multiplied by 97.5%. The deduction of 2.5% is a premium tax charge.

**Allocation of Net Premiums** - The Owner will determine the allocation of the net premiums among the General Account and the divisions of Separate Account A. The minimum percentage that may be allocated to any of these accounts is 10%.

**Unscheduled Premiums** - Premium payments in addition to the Planned Periodic Premium may be made at any time prior to the Maturity Date. The Company reserves the right to limit the number and amount of additional premium payments.

If there is an existing policy loan, premium payments in the amount of the Planned Periodic Premium, received at the Premium Frequency, will be applied as premium. Premium payments in excess of the Planned Periodic Premium or premium payments received other than at the Premium Frequency, will first be applied as policy loan repayments, then as premium when the policy loan is repaid.

**Grace Period** - The Company will allow a grace period of 61 days. Such grace period will begin on the day that the Company sends notice to the Owner and to the assignee, if any, that the cash value less any policy debt on a Monthly Anniversary Day is not enough to cover the monthly deduction for the month following such Monthly Anniversary Day. The cash value and monthly deduction are defined in the Nonforfeiture Provisions section.

The policy will terminate without value at the end of the grace period unless a premium large enough, after the deduction of the premium expense charge, to cover monthly deductions for at least three months is paid by the end of the grace period.

If the Insured dies during the grace period, the Company will deduct any overdue monthly deduction, which is applicable to the grace period, from the proceeds of the policy.

**Reinstatement** - If this policy terminates as provided in the Grace Period provision, it may be reinstated by the Owner at any time within five years after the date of termination. Reinstatement must occur before the maturity date. Reinstatement is subject to the following requirements:

(1) Receipt of satisfactory evidence of insurability by the Company.

(2) Payment of a premium large enough, after the deduction of the premium expense charge, to cover:

    (a) Monthly deductions for at least three policy months following the effective date of reinstatement.

    (b) Any due and unpaid monthly administrative charges.

(3) Payment or reinstatement of any debt against the policy which existed on the date of termination.

The effective date of a reinstated policy shall be the date the Company approves the application for reinstatement. Prior to receipt of the required premium for reinstatement, the accumulation value of the policy on the date of reinstatement shall be the accumulation value on the date of termination. The surrender factor in effect on reinstatement shall be as defined in the Surrender Charge section.

## DEATH BENEFIT PROVISIONS

**Death Benefit** - The death benefit provided by this policy depends on the Death Benefit Option in effect on the date of death. The Death Benefit Option for this policy is shown on page 3.

Option I - Under Option I, the death benefit shall be the greater of:

(1) The Specified Amount, or

(2) The accumulation value on the date of death multiplied by the corridor percentage.

Option II - Under Option II, the death benefit shall be equal to the Specified Amount plus the accumulation value on the date of death. However, the death benefit can never be less than the accumulation value on the date of death multiplied by the corridor percentage.

The corridor percentage depends on the attained age of the Insured on the date of death.

| Attained Age | Corridor Percentage | Attained Age | Corridor Percentage | Attained Age | Corridor Percentage | Attained Age | Corridor Percentage |
|---|---|---|---|---|---|---|---|
| 40 & below | 250% | 52 | 171% | 64 | 122% | 91 | 104% |
| 41 | 243 | 53 | 164 | 65 | 120 | 92 | 103 |
| 42 | 236 | 54 | 157 | 66 | 119 | 93 | 102 |
| 43 | 229 | 55 | 150 | 67 | 118 | 94 | 101 |
| 44 | 222 | 56 | 146 | 68 | 117 | 95 | 100 |
| 45 | 215 | 57 | 142 | 69 | 116 | | |
| 46 | 209 | 58 | 138 | 70 | 115 | | |
| 47 | 203 | 59 | 134 | 71 | 113 | | |
| 48 | 197 | 60 | 130 | 72 | 111 | | |
| 49 | 191 | 61 | 128 | 73 | 109 | | |
| 50 | 185 | 62 | 126 | 74 | 107 | | |
| 51 | 178 | 63 | 124 | 75-90 | 105 | | |

**Changes in Existing Coverage** - The Initial Specified Amount is shown on page 3. At any time after the first policy anniversary, the Owner may, by written request, increase or decrease the Specified Amount. Any change is subject to the following conditions:

(1) Any decrease will become effective on the Monthly Anniversary Day that coincides with or next follows receipt of the request. Any such decrease will be deducted in the following order:

    (a) From the most recent Specified Amount increase, if any;

    (b) Successively from the next most recent Specified Amount increase, if any;

    (c) From the Initial Specified Amount.

(2) Any request for an increase must be applied for on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company. The minimum increase in Specified Amount is $25,000.

(3) Any change approved by the Company will become effective on the effective date shown in the Supplemental Policy Specifications page, subject to deduction of the first month's cost of insurance therefor from the accumulation value of this policy.

(4) The Owner may request in writing to change the Death Benefit Option. If the request is to change from Option I to Option II, the Specified Amount will be decreased by the amount of the accumulation value. Evidence of insurability satisfactory to the Company will be required on a change from Option I to Option II. If the request is to change from Option II to Option I, the Specified Amount will be increased by the amount of the accumulation value. The effective date of either change shall be the Monthly Anniversary Day that coincides with or next follows the day the request for change is received.

(5) The minimum decrease in Specified Amount, by the Owner, is $25,000. No such decrease may reduce the Specified Amount below $100,000.

**Change of Maturity Date -** The Maturity Date may be changed, upon written request by the Owner. The new Maturity Date may be any policy anniversary after the end of the tenth policy year and before the policy anniversary nearest the Insured's 95th birthday. However, the new Maturity Date must be at least twelve months from the date the Company receives a written request therefor from the Owner.

## GENERAL PROVISIONS

**The Contract** - This contract is made in consideration of the application and the payment of an initial premium sufficient to keep this policy in force for at least two months. A copy of the application is attached as a part of this policy. The entire contract consists of this policy and the application (and any supplemental applications for additional Specified Amounts). In the absence of fraud, all statements in an application shall be deemed representations and not warranties. No statement shall be used to avoid this policy or to defend against a claim unless it is contained in the application or in a supplemental application, and a copy of such application is attached to the policy when issued or made a part of the policy when changes in the Specified Amount become effective.

**Ownership of Policy** - The Insured shall be the Owner of the policy unless stated otherwise in the contract or changed at a later date. During the lifetime of the Insured all rights under this policy will be exercised by the Owner if the Owner has reserved the right to change the beneficiary. The Owner may name a new Owner or name a Contingent Owner. The Owner may change a Contingent Owner. If the Owner does not survive the Insured, the Contingent Owner will, if living, become the Owner. Upon proper written notice of the Owner any prior revocable designation of a Contingent Owner or beneficiary will be voided. Unless otherwise stated, all rights under this policy are vested in the Owner or in the Owner's assigns.

**Incontestability** - The Company will not contest this policy, except for any increase in the Specified Amount, after it has been in force during the lifetime of the Insured for a period of two years from its policy date. This provision does not apply to any benefits provided by a rider which grants disability benefits or an added benefit in the event death results from an accident. Any increase in the Specified Amount will not be contested after such increase has been in force during the lifetime of the Insured for two years following the effective date of such increase. Any increase will be contestable, within the two year period, only with regard to statements concerning the increase.

**Suicide** - This policy does not cover the risk of suicide within two years from the policy date, whether the Insured is sane or insane. In such event, the only liability of the Company will be a refund of premiums paid without interest less any policy loan and less any partial surrender.

This policy does not cover the risk of suicide, whether sane or insane, within two years from the effective date of any increase in the Specified Amount with respect to such increase. In such event, the only liability of the Company will be a refund of the cost of insurance for such increase.

**Misstatement of Age or Sex-** If the age or sex of the Insured has been misstated, the amount payable under this policy by reason of the death of the Insured shall be equal to the sum of the following:

(1) The accumulation value on the date of death, less any debt.

(2) The death benefit, less the accumulation value on the date of death, multiplied by the ratio of (a) the cost of insurance actually deducted at the beginning of the policy month in which death occurs, to (b) the cost of insurance that should have been deducted at the Insured's true age or sex.

**Beneficiary** - At any time prior to the death of the Insured, the Owner may name or change a revocable beneficiary. If no beneficiary has been named, the Owner will be the beneficiary. A change of the Owner or beneficiary must be made in writing. To be binding on the Company, the change must be signed by the Owner and any irrevocable beneficiary and must be filed at the Home Office. Any such change shall take effect as of the date it was signed, subject to any payment made or other action taken by the Company before the change was filed. Unless otherwise provided, the proceeds to be paid at the death of the Insured shall be paid in equal shares to those named beneficiaries who survive the Insured. Payment will be made in the following order: (1) the primary beneficiaries, (2) any secondary beneficiaries, if no primary beneficiary survives the Insured, (3) any tertiary beneficiaries, if no primary or secondary beneficiary survive the Insured, (4) Owner, (5) the executors, administrators, or assigns of the Owner, if no named beneficiary survives the Insured. The terms "children" or "lawful children" of a person, when used to name beneficiaries, shall include only lawful children born to or legally adopted by that person.

**Assignment** - No assignment of this policy will be binding upon the Company until it has been filed at its Home Office. Each assignment will be subject to any payments made or action taken by the Company before it was filed. The Company will not be responsible for any assignment being valid or sufficient.

**Proceeds** - Proceeds means the amount payable on the maturity date, on the surrender of this policy before the maturity date or upon the death of the Insured.

The proceeds payable on the death of the Insured shall be the death benefit, less any debt. If the policy is surrendered, the proceeds shall be the cash value, less any debt. On the maturity date the proceeds shall be the cash value, less any debt. The proceeds are subject to the adjustment provided in the Misstatement of Age, Incontestability and Suicide provisions of this policy.

**Payment of Proceeds** - Unless an optional mode of settlement is elected, the proceeds payable on the death of the Insured shall be paid in one sum to the beneficiary.

Unless an optional mode of settlement is elected, any proceeds payable on the maturity date or upon surrender of this policy shall be paid in one sum to the Owner.

**Postponement of Payments** - The Company will usually pay any amounts payable on surrender, withdrawal, or policy loan allocated to Separate Account A within seven days after written notice is received. The Company will usually pay any death benefit proceeds within seven days after the Company receives due proof of death. Payment of any amount payable on surrender, withdrawal, policy loan, or death may be postponed whenever:

(1) The New York Stock Exchange is closed other than customary week-end and holiday closings, or trading on the New York Stock Exchange is restricted as determined by the Securities and Exchange Commission;

(2) The Securities and Exchange Commission, by order, permits postponement for the protection of policyowners; or

(3) An emergency exists as determined by the Securities and Exchange Commission, as a result of which disposal of securities is not reasonably practicable or it is not reasonably practicable to determine the value of the net assets of Separate Account A.

Transfers may also be postponed under these circumstances.

The Company may defer the portion of any transfer, amount payable on surrender, withdrawal or policy loan from the General Account for not more than six months. However, no payment from the General Account to pay premiums on policies with the Company will be deferred.

**Age** - Age of the Insured, as used herein, refers to the age nearest birthday on the policy date. Attained age of the Insured means the age nearest birthday on the last policy anniversary.

**Modification** - Only an elected officer of the Company can, on behalf of the Company, change or modify this policy or waive any of the Company's rights or requirements. Any such changes must be made in writing.

**Policy Date** - The date shown on page 3, which is the date requested by the Owner or the later of the date of application or the date of any required medical examination. The policy date is the date from which policy years, policy months, and policy anniversaries will be determined.

**Effective Date of Coverage** - The effective date of coverage under this policy shall be as follows:

(1) For all coverage provided in the original application, the effective date shall be the policy date.

(2) For any increase or addition to coverage, the effective date shall be the date shown on the Supplemental Policy Specifications page. The effective date for such coverage shall begin on the policy Monthly Anniversary Day that coincides with or next follows the date the application for the increase or addition is approved by the Company.

**Termination** - All coverage under this policy shall terminate when any one of the following events occurs:

(1) The Owner requests that coverage terminate. (Such request will require a surrender of this policy.)

(2) The Insured dies.

(3) The policy matures.

(4) The grace period ends.

**Maturity Date** - Unless otherwise specified, the maturity date will be the policy anniversary nearest the Insured's 95th birthday. Coverage may expire before the maturity date if no premiums are paid after the initial premium or future premiums are not enough to continue coverage to such date.

**Annual Report** - Each year a report will be sent to the Owner which shows the current cash value, premiums paid and all charges since the last report, and outstanding policy loans.

**Non-Participating** - This policy does not share in any surplus distribution of the Company. No dividends are payable.

**Specified Amount** - The face amount of the policy, which is the minimum death benefit payable under the policy.

## POLICY LOANS

Policy Loans - After the first policy anniversary, a loan will be granted upon the sole security and assignment of this policy to the Company. The maximum loan amount is 90% of the cash value on the date of the loan. Any prior debts to the Company against this policy will be deducted from the amount advanced under the loan. Any outstanding debt will be deducted from the proceeds payable at the Insured's death, on maturity, or on surrender.

The Owner may allocate the policy loan among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the policy loan will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the policy loan. Accumulation value in each, division equal to the policy loan allocated to each division will be transferred to the General Account and reduce the accumulation value in that division. If loan interest is not paid when due, an amount of accumulation value equal to the loan interest will also be transferred.

If the policy debt exceeds the policy's accumulation value in the General Account, the Company will transfer accumulation value equal to the excess debt from the divisions of Separate Account A to the General Account as security for the excess debt. The amount transferred will be allocated among the divisions in the same proportion that the accumulation value in each division bears to the policy's total accumulation value in all divisions of Separate Account A.

Policy Loan Interest - Interest on policy loans is payable at the effective rate of 8%, or at any lower rate established by the Company for any period during which the loan is outstanding. Loan interest accrues

on a daily basis from the date of the loan and is payable at the end of each policy year. Loan interest unpaid on a policy anniversary becomes loan principal.

The Company shall provide at least 30 days written notice to the Owner (or any other party designated by the Owner to receive notice under this policy) and any assignee recorded at the Home Office of any increase in the interest rate on loans outstanding 40 or more days prior to the effective date of the increase. As to loans made during the 40 days before the effective date of the policy loan interest rate increase, the Company shall notify the Owner and any assignee at the time the loan is made.

The effective date of any increase in such interest rate shall not be less than one year after the effective date of the establishment of the previous rate. If the interest rate is increased, the amount of such increase shall not exceed one percent per year.

Interest accrues on a daily basis from the date of the loan and is compounded annually. Interest unpaid on a policy anniversary becomes loan principal.

Debt - As used in this policy, debt means the principal of any loan outstanding against this policy, plus any accrued loan interest.

If the policy debt exceeds the cash value, the Company will send a notice by mail to the Owner and to the assignee, if any, at their addresses last reported to the Company. If the excess is not paid within 61 days from the date the notice is mailed, the policy will terminate without value.

Policy Loan Repayment - Any debt may be repaid, in whole or in part, at any time while this policy is in force. When a loan repayment is made, accumulation value securing the debt in the General Account equal to the loan repayment will be allocated among the General Account and divisions of Separate Account A using the same percentages used to allocate net premiums.

## SEPARATE ACCOUNT PROVISIONS

**Separate Account** - The variable benefits under this policy are provided through investments in Separate Account A. The Company established Separate Account A as a separate investment account to support variable life insurance contracts. The Company will not allocate assets to Separate Account A to support the operation of any contracts or policies that are not variable life insurance.

The assets of Separate Account A are owned by the Company. However, these assets are not part of the Company's General Account. Income, gains and losses, whether or not realized, from assets allocated to Separate Account A will be credited to or charged against the account without regard to the Company's other income, gains or losses.

Assets equal to the reserves and other liabilities of Separate Account A will not be charged with liabilities that arise from any other business the Company may conduct. The Company shall have the right to transfer to its General Account any assets of Separate Account A which are in excess of such reserves and other policy liabilities.

Separate Account A is registered with the Securities and Exchange Commission as a unit investment trust under the Investment Company Act of 1940. Separate Account A is also subject to the laws of the State of New Hampshire which regulate the operations of insurance companies incorporated in New Hampshire. The investment policy of Separate Account A will not be changed without the approval of the Insurance Commissioner of the State of New Hampshire. The approval process is on file with the Insurance Commissioner of the state in which this policy was delivered.

**Divisions** - Separate Account A has several divisions. Each division will buy shares of a separate series of Chubb America Fund, Inc. Each series represents a separate investment portfolio of Chubb America Fund, Inc. All divisions of Separate Account A are shown on page 3. The Owner will determine the percentage of net premiums which will be allocated to each division.

Income, gains and losses, whether or not realized, from the assets of each division of Separate Account A are credited to or charged against that division without regard to income, gains or losses in other divisions of Separate Account A or in the General Account.

The Company will value the assets of each division of Separate Account A at the end of each valuation period. A valuation period is the period between two successive valuation dates. A valuation date is each day that the New York Stock Exchange is open for business or any other day in which there is material change in the value of the assets in Separate Account A.

**Transfers** - The Owner may transfer amounts between the General Account and the divisions of Separate Account A or among the divisions of Separate Account A by sending a written request to the Company. The total amount transferred must be at least $250. No amounts under $250 may be transferred out of any division of Separate Account A or the General Account unless such lesser amount constitutes the entire balance. A transfer charge equal to the lesser of $25 or 10% of the amount transferred will be imposed each time amounts are transferred, except with respect to policy loans. The transfer charge will be deducted from the amount that is transferred. The Company will make transfers so that the accumulation value on the date of transfer will not be affected by the transfer except to the extent of the transfer charge. The Company may revoke or modify the transfer privilege at any time, including the minimum amount transferable and the transfer charge.

**Transfers (continued) -**

As long as any portion of the policy's accumulation value is allocated to a division of Separate Account A, the policy's accumulation value and cash value will reflect the investment performance of the chosen division(s) of Separate Account A. The death benefit may also reflect the performance of the chosen division(s) of Separate Account A.

At any time, the Owner may transfer 100% of the policy's accumulation value to the General Account. While 100% of the policy's accumulation value is allocated to the General Account, minimum benefits for the policy will be fixed and guaranteed.

No transfer charge will be imposed for a transfer of all accumulation value in Separate Account A to the General Account. However, any transfer from the General Account to the division(s) of Separate Account A will be subject to the transfer charge.

**Addition, Deletion, or Substitution of Investments -** The Company reserves the right, subject to compliance with applicable law, to make additions to, deletions from, or substitutions for the shares of a series that are held by Separate Account A or that Separate Account A may purchase. The Company reserves the right to eliminate the shares of any of the series of Chubb America Fund, Inc. and to substitute shares of another series of Chubb America Fund, Inc. or of another

open-end, registered investment company, if the shares or series are no longer available for investment or if in the Company's judgement, further investment in any eligible series should become inappropriate in view of the purposes of the policy. The Company will not substitute any shares attributable to the Owner's interest in a division of Separate Account A without notice to the Owner and prior approval of the Securities and Exchange Commission, to the extent required by the Investment Company Act of 1940. This shall not prevent Separate Account A from purchasing other securities for other series or classes of policies, or from permitting conversion between series or classes of policies or contracts on the basis of requests made by owners.

The Company reserves the right to establish additional divisions of Separate Account A, each of which would invest in a new series of Chubb America Fund, Inc. or in shares of another open-end investment company. The Company also reserves the right to eliminate existing divisions of Separate Account A.

If the Company considers it to be in the best interest of persons having voting privileges under the policies, Separate Account A may be operated as a management company under the Investment Company Act of 1940; or it may be deregistered under that Act in the event registration is no longer required or it may be combined with other separate accounts.

## NONFORFEITURE VALUES

**Accumulation Value** - The accumulation value of the policy is equal to the total of the policy's accumulation value in the General Account and the policy's accumulation value in divisions of Separate Account A.

**Cash Value** - The cash value is equal to the accumulation value less a surrender charge.

**Surrender Charge** - The surrender charge for the Initial Specified Amount is calculated by multiplying the surrender factor (shown below) by the lesser of (1) or (2), where:

(1) is the total premiums paid in the first policy year;

(2) is the Maximum Surrender Premium for the issue age, as shown in the table on page 3A, multiplied by the Initial Specified Amount.

The surrender factor will vary by policy year according to the following table:

| Policy Year | 1-5 | 6 | 7 | 8 | 9 | 10 | 11 and later |
|---|---|---|---|---|---|---|---|
| Surrender Factor | .30 | .25 | .20 | .15 | .10 | .05 | 0 |

An additional surrender charge will be assessed for any increase in the Specified Amount. The additional charge is calculated by multiplying the surrender factor (shown below) by the lesser of (1) or (2), where:

(1) is (a) times (b) divided by (c),where:

    (a) is the increase in the Specified Amount;

    (b) is the sum of the accumulation value just prior to the increase in the Specified Amount and the total premiums received in the twelve months just following the increase in the Specified Amount;

    (c) is the Specified Amount after the increase in the Specified Amount;

(2) is the Maximum Surrender Premium for the attained age of the Insured on the effective date of the increase in the Specified Amount, as shown on page 3A, multiplied by the increase in the Specified Amount.

The surrender factor is based on how long the increase has been in effect according to the following table:

| Increase Year | 1-5 | 6 | 7 | 8 | 9 | 10 | 11 and later |
|---|---|---|---|---|---|---|---|
| Surrender Factor | .15 | .125 | .10 | .075 | .05 | .025 | 0 |

The surrender charge in effect at any time is the sum of the surrender charge for the Initial Specified Amount plus the additional surrender charge for any increase in the Specified Amount. If the Specified Amount is decreased, the surrender charge will not decrease.

**Separate Account Accumulation Values** - The accumulation value in each division on the policy date is equal to the portion of the net premium which has been paid and allocated to that division, less the portion of the first monthly deduction allocated to the policy's accumulation value in that division.

At the end of each valuation period after the policy date, the policy's accumulation value in a division is equal to (1) plus (2) plus (3) minus (4) minus (5) where:

(1) is the accumulation value in the division on the preceding valuation date multiplied by the Net Investment Factor for the current valuation period.

(2) is any net premium received during the current valuation period which is allocated to the division.

(3) is all accumulation values transferred to the division from another division or the General Account during the current valuation period.

(4) is all accumulation values transferred from the division to another division or the General Account and accumulation values transferred to secure a policy debt during the current valuation period.

(5) is all withdrawals from the division during the current valuation period.

In addition, whenever a valuation period includes the Monthly Anniversary Day, the accumulation value at the end of such period is reduced by the portion of the monthly deduction allocated to the division.

**Net Investment Factor** - The Net Investment Factor measures the investment performance of a division during a valuation period. The Net Investment Factor for each division for a valuation period is calculated as (a) divided by (b), minus (c) where:

(a) is (1) the value of the assets in the division at the end of the preceding valuation period, plus (2) the investment income and capital gains, realized or unrealized, credited to the assets in the valuation period for which the net investment factor is being determined, minus (3) the capital losses, realized or unrealized, charged against those assets during the valuation period, minus (4) any amount charged against each division for taxes, or any amount the Company sets aside during the valuation period as a reserve for taxes attributable to the operation or maintenance of each division.

(b) is the value of the assets in the division at the end of the preceding valuation period.

(c) is a charge not to exceed .0024657% for each day in the valuation period. This corresponds to .9% per year for mortality and expense risks.

**General Account Accumulation Value** - The accumulation value in the General Account on the policy date is equal to the portion of the net premium which has been paid and allocated to the General Account, less the portion of the first monthly deduction allocated to the General Account.

On each Monthly Anniversary Day, the accumulation value in the General Account is equal to (1) plus (2) plus (3) plus (4) minus (5) minus (6) minus (7) where:

(1) is the accumulation value in the General Account on the preceding Monthly Anniversary Day.

(2) is one month's interest on item (1).

(3) is any net premium received since the preceding Monthly Anniversary Day plus interest from the date the net premium is received to the Monthly Anniversary Day.

(4) is the sum of all accumulation values transferred to the General Account division of Separate Account A since the preceding Monthly Anniversary Day and interest from the date the accumulation value is transferred to the Monthly Anniversary Day.

(5) is the sum of all accumulation values transferred from the General Account to a division of Separate Account A since the preceding Monthly Anniversary Day and interest from the date the accumulation value is transferred to the Monthly Anniversary Day.

(6) is all withdrawals from the General Account since the preceding Monthly Anniversary Day plus interest from the date of the withdrawal to the Monthly Anniversary Day.

(7) is the portion of the monthly deduction allocated to the accumulation value in the General Account, to cover the policy month following the Monthly Anniversary Day.

On any date other than a Monthly Anniversary Day, the accumulation value will be calculated on a consistent basis.

**General Account Interest Rate** - The policy's accumulation value in the General Account will earn interest daily at a minimum guaranteed effective rate of 4 1/2%. Interest in excess of the guaranteed rate may be applied in the calculation of the accumulation value at such increased rates as the Company may determine. The policy's accumulation value held in the General Account for policy loan collateral will earn interest daily at the lesser of an effective rate of 6% or the interest rate currently credited.

**Monthly Deduction** - The monthly deduction for a policy month shall be equal to (1) plus (2), where:

(1) is the cost of insurance (as described below) and the cost of additional benefits provided by rider for the policy month.

(2) is a monthly administrative charge. This charge is equal to $6.00 per month in each policy year.

The monthly deduction for a policy month will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account less any debt and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, at the beginning of the policy month.

**Cost of Insurance** - The cost of insurance for the Insured is determined on a monthly basis. The cost of insurance is determined separately for the Initial Specified Amount and each subsequent increase in Specified Amount. The cost of insurance is calculated as (1), multiplied by the result of (2) minus (3), where:

(1) is the cost of insurance rate as described in the Cost of Insurance Rates provision.

(2) is the death benefit at the beginning of the policy month, divided by 1.0036748.

(3) is the accumulation value at the beginning of the policy month, prior to the monthly deduction for the cost of insurance.

If the Death Benefit Option is Option I and there have been increases in the Specified Amount then the accumulation value shall be first considered a part of the Initial Specified Amount. If the accumulation value exceeds the Initial Specified Amount, it shall then be considered a part of the additional Specified Amounts resulting from increases in the order of such increases.

**Cost of Insurance Rates** - The monthly cost of insurance rate is based on the sex, issue age, policy year, and rating class of the Insured. Monthly cost of insurance rates will be determined by the Company based upon expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the Insured. The rating class will be determined separately for the Initial Specified Amount and for any increase in Specified Amount that requires evidence of insurability. However, the cost of insurance rates can never be greater than those shown in the Table of Monthly Guaranteed Cost of Insurance Rates. Such guaranteed maximum rates are based on the Commissioners 1980 Standard Ordinary Mortality Table.

**Insufficient Cash Value** - If the cash value less any debt on a Monthly Anniversary Day is insufficient to cover the monthly deduction for the month following such Monthly Anniversary Day, the policy shall terminate as provided in the Grace Period provision.

**Continuation of Insurance** - In the event Planned Periodic Premium payments are not continued, insurance coverage under this policy and any benefits provided by rider will be continued until the cash value, less any debt, is insufficient to cover the monthly deduction, as provided in the Grace Period provision. This provision shall not continue the policy beyond the Maturity Date nor continue any rider beyond the date for its termination, as provided in the rider. If the cash value is sufficient to continue this policy to the Maturity Date, then any remaining cash value will be paid to the Owner if the Insured is then living.

**Surrender** - Upon written request the Owner may surrender this policy at any time during the lifetime of the Insured and before the Maturity Date. The amount payable on surrender of this policy shall be the cash value on the date the Company receives the request for surrender, less any debt.

**Withdrawal of Cash Value (Withdrawal)** - Upon written request the Owner may make a withdrawal from this policy. Any withdrawal is subject to the following conditions:

(1) The amount withdrawn may not exceed the cash value less any outstanding debt.

(2) The minimum amount that may be withdrawn is $750.

(3) A charge equal to the lesser of $25 or 2% of the amount of the withdrawal will be deducted from the amount of each withdrawal.

(4) The accumulation value will be reduced by the sum of the withdrawal and a pro-rata portion of the surrender charge in effect on the date of the withdrawal. The remaining accumulation value and schedule of surrender charges will be determined by multiplying each of these values by a numerical factor. This numerical factor is equal to

$$1 - \left[ \frac{\text{Amount of Withdrawal}}{\text{Cash Value Immediately Before Withdrawal}} \right]$$

(5) The Death Benefit will be reduced by an amount equal to the reduction in the accumulation value. This will result in a reduction of the Specified Amount if the Death Benefit is Option I by an amount equal to the reduction in the accumulation value. The Specified Amount remaining in force after any withdrawal must be at least $10,000.

The Owner may allocate the withdrawal among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the withdrawal will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the withdrawal.

**Basis of Computations** - Minimum cash values and reserves in the General Account are based on the Commissioners 1980 Standard Ordinary Mortality Table with interest at 4 1/2% per year.

The method used in computing cash values and reserves in Separate Account A is in accordance with actuarial procedures that recognize the variable nature of Separate Account A. The method used is such that if the Net Investment Factor, less one, for all divisions of Separate Account A, at all times from the policy date, is equal to an effective annual interest rate of 4 1/2%, then the cash values and reserves in Separate Account A will be at least equal to the minimum cash values and reserves, which would have been required by the law of the state in which this policy is delivered, of an equivalent policy in which all net premiums have been allocated to the General Account.

All values under this policy are not less than the values required by the state in which this policy was delivered. A detailed statement of the method of computation of cash values under this policy has been filed with the insurance department of the state in which this policy was delivered.

**Illustration of Benefits and Values** - The Company will provide illustrations of death benefits and cash values at any time after the policy date upon written request by the Owner and payment of a nominal fee. The fee payable will be the one then in effect for this service; however, such fee can never exceed $25. This illustration will be based on the existing cash value at the time of request and maximum cost of insurance rates. Additional illustrations will be made based on the existing cash value and current mortality assumptions.

## SETTLEMENT OPTIONS

**Election of an Option -** Any proceeds to be paid under this policy may be paid as an income under any one of the options stated below. The election of an option or change of prior election must be made in writing to the Company at its Home Office. If an option is not chosen by the Owner prior to the death of the Insured, the primary beneficiary may make such election.

Unless the Company agrees otherwise, any such payments will be made only to a natural person taking in his own right. An option may be elected only if the amount of the proceeds is $2,000 or more. The Company may change the interval of payments to 3, 6 or 12 months, if necessary to increase the guaranteed payments to at least $20.00 each.

**Option A - Installments of a Specified Amount -** Payments of an agreed amount to be made each month until the proceeds and interest are exhausted.

**Option B - Installments for a Specified Period -** Payments to be made each month for an agreed number of years.

**Option C - Life Income -** Payments to be made each month for the lifetime of the payee. It is guaranteed that payments will be made for a minimum of 10, 15, or 20 years as agreed upon.

**Option D - Interest -** Payment of interest on the proceeds held by the Company. The amount of interest payment is calculated at the compound rate of 3% per year. Interest payments will be made in 12-, 6-, 3-, or 1-month intervals as agreed upon.

**Supplementary Contract -** When the proceeds of this policy become payable, a supplementary contract setting forth the terms of the option chosen will be issued to the payee. The first payment under Option A, B, or C shall be payable on the effective date of such option. The first payment under Option D shall be payable at the end of the first agreed payment interval.

**Interest -** The interest rate for Options A, B, and D will not be less than 3% per year. The interest rate for

Option C will not be less than 2 1/2% per year. Interest in addition to that stated may be paid or credited from time to time under any option but only at the sole discretion of the Company.

**Withdrawal Value -** Unless otherwise stated in the election of an option, the payee shall have the right to receive the withdrawal value under that option.

For Options A and D the withdrawal value shall be any unpaid balance of proceeds plus accrued interest.

For Option B the withdrawal value shall be the commuted value of the remaining payments. Such value will be calculated on the same basis as the original payments.

For Option C the withdrawal value shall be the commuted value of the remaining payments. Such value will be calculated on the same basis as the original payments. To receive this value, the payee must submit evidence of insurability. Such evidence must be satisfactory to the Company. Otherwise, the withdrawal value shall be the commuted value of any remaining guaranteed payments. In this event the payments will be resumed at the end of the guaranteed period if the payee should be alive on that date. The payments will then continue for the lifetime of the payee.

Under any of these options, the payee shall have the right to receive the withdrawal value in partial amounts. However, the partial amounts shall not be less than the smaller of the withdrawal value or $100.

**Death of Payee -** If the payee dies before the proceeds are exhausted or the prescribed payments made, a final payment will be made in one sum to the estate of the last surviving payee. The amount to be paid will be calculated as described for the applicable option in the Withdrawal Value Provision.

**Limitation on Rights of Payee and Claims of Creditors -** Neither the amount retained under an option nor any payment made under an option can be assigned or pledged. To the extent permitted by law such amounts or payments shall not be subject to claims of creditors or legal process.

## SETTLEMENT OPTIONS
## TABLES OF MONTHLY INSTALLMENTS UNDER OPTION B OR C

Monthly installments are shown for each $1,000 of net proceeds applied. The ages shown are ages nearest birthday when the first monthly installment is payable.

### OPTION B TABLE
### INSTALLMENTS FOR A SPECIFIED PERIOD

| Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment |
|-------|---------------------|-------|---------------------|-------|---------------------|-------|---------------------|-------|---------------------|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.48 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

Multiply the monthly installment by 11.84 for annual, by 5.96 for semi-annual or by 2.99 for quarterly installments.

### OPTION C TABLE
### LIFE INCOME

| Attained Age of Payee | | MONTHLY INSTALLMENTS | | | Attained Age of Payee | | MONTHLY INSTALLMENTS | | |
|------|--------|----------|----------|----------|------|--------|----------|----------|----------|
| | | | GUARANTEED | | | | | GUARANTEED | |
| Male | Female | 10 Years | 15 Years | 20 Years | Male | Female | 10 Years | 15 Years | 20 Years |
| 16 or Under | 21 or Under | $2.83 | $2.82 | $2.81 | 51 | 56 | $4.60 | $4.44 | $4.24 |
| 17 | 22 | 2.85 | 2.84 | 2.84 | 52 | 57 | 4.69 | 4.52 | 4.30 |
| 18 | 23 | 2.88 | 2.87 | 2.86 | 53 | 58 | 4.79 | 4.60 | 4.36 |
| 19 | 24 | 2.90 | 2.89 | 2.88 | 54 | 59 | 4.90 | 4.69 | 4.41 |
| 20 | 25 | 2.93 | 2.92 | 2.91 | 55 | 60 | 5.01 | 4.77 | 4.47 |
| 21 | 26 | 2.95 | 2.95 | 2.93 | 56 | 61 | 5.12 | 4.86 | 4.53 |
| 22 | 27 | 2.98 | 2.97 | 2.96 | 57 | 62 | 5.23 | 4.94 | 4.59 |
| 23 | 28 | 3.01 | 3.00 | 2.99 | 58 | 63 | 5.35 | 5.03 | 4.64 |
| 24 | 29 | 3.04 | 3.03 | 3.02 | 59 | 64 | 5.48 | 5.12 | 4.70 |
| 25 | 30 | 3.08 | 3.07 | 3.05 | 60 | 65 | 5.61 | 5.21 | 4.75 |
| 26 | 31 | 3.11 | 3.10 | 3.08 | 61 | 66 | 5.74 | 5.30 | 4.80 |
| 27 | 32 | 3.14 | 3.13 | 3.11 | 62 | 67 | 5.87 | 5.39 | 4.85 |
| 28 | 33 | 3.18 | 3.17 | 3.15 | 63 | 68 | 6.01 | 5.48 | 4.90 |
| 29 | 34 | 3.22 | 3.20 | 3.18 | 64 | 69 | 6.16 | 5.56 | 4.94 |
| 30 | 35 | 3.26 | 3.24 | 3.22 | 65 | 70 | 6.30 | 5.65 | 4.98 |
| 31 | 36 | 3.30 | 3.28 | 3.25 | 66 | 71 | 6.45 | 5.73 | 5.02 |
| 32 | 37 | 3.34 | 3.32 | 3.29 | 67 | 72 | 6.60 | 5.82 | 5.05 |
| 33 | 38 | 3.39 | 3.36 | 3.33 | 68 | 73 | 6.76 | 5.90 | 5.09 |
| 34 | 39 | 3.43 | 3.41 | 3.37 | 69 | 74 | 6.91 | 5.97 | 5.12 |
| 35 | 40 | 3.48 | 3.45 | 3.41 | 70 | 75 | 7.07 | 6.05 | 5.14 |
| 36 | 41 | 3.53 | 3.50 | 3.45 | 71 | 76 | 7.23 | 6.12 | 5.17 |
| 37 | 42 | 3.59 | 3.55 | 3.50 | 72 | 77 | 7.38 | 6.18 | 5.19 |
| 38 | 43 | 3.64 | 3.60 | 3.54 | 73 | 78 | 7.54 | 6.24 | 5.20 |
| 39 | 44 | 3.70 | 3.65 | 3.59 | 74 | 79 | 7.69 | 6.30 | 5.22 |
| 40 | 45 | 3.76 | 3.71 | 3.64 | 75 | 80 | 7.84 | 6.35 | 5.23 |
| 41 | 46 | 3.82 | 3.77 | 3.69 | 76 | 81 | 7.98 | 6.39 | 5.24 |
| 42 | 47 | 3.88 | 3.82 | 3.74 | 77 | 82 | 8.13 | 6.43 | 5.25 |
| 43 | 48 | 3.95 | 3.88 | 3.79 | 78 | 83 | 8.26 | 6.47 | 5.26 |
| 44 | 49 | 4.02 | 3.95 | 3.84 | 79 | 84 | 8.39 | 6.50 | 5.26 |
| 45 | 50 | 4.09 | 4.01 | 3.90 | 80 or Over | 85 or Over | 8.51 | 6.53 | 5.27 |
| 46 | 51 | 4.17 | 4.08 | 3.95 | | | | | |
| 47 | 52 | 4.25 | 4.15 | 4.01 | | | | | |
| 48 | 53 | 4.33 | 4.22 | 4.07 | | | | | |
| 49 | 54 | 4.42 | 4.29 | 4.12 | | | | | |
| 50 | 55 | 4.50 | 4.37 | 4.18 | | | | | |

Multiply the monthly installment by 11.80 for annual, by 5.93 for semi-annual or by 2.98 for quarterly installments.

Flexible Premium Variable Life Insurance Policy - Flexible Premiums Payable
Until The Maturity Date Or Until Prior Death.  Adjustable Death Benefit.
Insurance Payable At Death.   Some Benefits Reflect Investment Results.
Additional Benefits, If Any, As Indicated On Page 3.
Non-Participating.  No Dividends.

# AMENDMENT

This amendment is a part of the policy to which it is attached and it takes effect on the Policy Date of the policy. This amendment is subject to the terms and conditions of the policy unless otherwise stated herein. The policy is amended as follows:

The first paragraph of the **Divisions** section of the **SEPARATE ACCOUNT PROVISIONS** on page 12 is revised to read:

Separate Account A has several divisions. Each division will buy shares of a separate series of Jefferson Pilot Variable Fund, Inc., Templeton Variable Products Series Fund, Fidelity Variable Insurance Products Fund, Fidelity Variable Insurance Products Fund II, Oppenheimer Variable Account Funds, and MFS Variable Insurance Trust. Each series represents a separate investment portfolio of Jefferson Pilot Variable Fund, Inc., Templeton Variable Products Series Fund, Fidelity Variable Insurance Products Fund, Fidelity Variable Insurance Products Fund II, Oppenheimer Variable Account Funds, and MFS Variable Insurance Trust. All divisions of Separate Account A are shown on page 3. The Owner will determine the percentage of net premiums which will be allocated to each division.

The first and second paragraphs of the **Addition, Deletion, or Substitution of Investments** section of the **SEPARATE ACCOUNT PROVISIONS** on page 13 is revised to read:

The Company reserves the right, subject to compliance with applicable law, to make additions to, deletions from, or substitutions for the shares of a series that are held by Separate Account A or that Separate Account A may purchase. The Company reserves the right to eliminate the shares of any of the series of Jefferson Pilot Variable Fund, Inc., Templeton Variable Products Series Fund, Fidelity Variable Insurance Products Fund, Fidelity Variable Insurance Products Fund II, Oppenheimer Variable Account Funds, and MFS Variable Insurance Trust, and to substitute shares of another series of Jefferson Pilot Variable Fund, Inc.,

Templeton Variable Products Series Fund, Fidelity Variable Insurance Products Fund, Fidelity Variable Insurance Products Fund II, Oppenheimer Variable Account Funds, and MFS Variable Insurance Trust, or of another open-end, registered investment company, if the shares or series are no longer available for investment or if in the Company's judgment, further investment in any eligible series should become inappropriate in view of the purposes of the policy. The Company will not substitute any shares attributable to the Owner's interest in a division of Separate Account A without notice to the Owner and prior approval of the Securities and Exchange Commission, to the extent required by the Investment Company Act of 1940. This shall not prevent Separate Account A from purchasing other securities for other series or classes of policies, or from permitting conversion between series or classes of policies or contracts on the basis of requests made by owners.

The Company reserves the right to establish additional divisions of Separate Account A, each of which would invest in a new series of Jefferson Pilot Variable Fund, Inc., Templeton Variable Products Series Fund, Fidelity Variable Insurance Products Fund, Fidelity Variable Insurance Products Fund II, Oppenheimer Variable Account Funds, and MFS Variable Insurance Trust, or in shares of another open-end investment company. The Company also reserves the right to eliminate existing divisions of Separate Account A.

**Jefferson Pilot Financial Insurance Company**

*David A. Stonecipher*

Chief Executive Officer

*Robert A. Reed*

Secretary

## Separate Account Name Change Endorsement

This endorsement is a part of the policy to which it is attached and takes effect on the Policy Date of the policy.

This endorsement is subject to the terms and conditions of the policy unless otherwise stated herein.

The policy to which this endorsement is attached is amended by changing all references of "Chubb Separate Account A" to "JPF Separate Account A".

All other terms of your policy remain the same.

Signed for Jefferson Pilot Financial Insurance Company

Chief Executive Officer

Secretary

Form AMD-2814

506013141

**Jefferson Pilot Financial Insurance Company,** One Granite Place, P.O. Box 515, Concord, New Hampshire 03302

## EXTENSION OF MATURITY DATE RIDER

**Effective Date -**

This rider is part of the policy to which it is attached. It takes effect on the effective date of the policy unless a later effective date is shown above. In this rider, "we", "us" or "our" means Jefferson Pilot Financial Insurance Company; "you" means the Owner of the policy; and "Insured" means the person named on the Data Page.

The Maturity Date may be extended beyond that date otherwise defined in the policy by written request. The new Maturity Date will be that requested by you. If you elect to extend the original Maturity Date, you may revoke this election in writing at any time prior to the original Maturity Date.

After the original Maturity Date:

(1) No new premiums will be accepted by us;
(2) We will continue to credit interest to the policy's Accumulation Value of the General Account in the same manner;
(3) The Accumulation Value in each division of Separate Account A will continue to be calculated in the same manner;
(4) The Death Benefit will always be equal to the Accumulation Value of the policy; .
(5) Interest on any policy loans will continue to accrue and become part of any debt;
(6) We will deduct no more cost of insurance charges.

Chief Executive Officer

Secretary

P93-55

506013141

**Jefferson Pilot Financial Insurance Company,** One Granite Place, P.O. Box 515, Concord, New Hampshire 03302

## GENERAL REVISIONS RIDER

Jefferson Pilot Financial Insurance Company issues this Rider as a part of the policy to which it is attached. This Rider is issued in consideration of the application and the payment of the initial premium for the policy. There is no premium charge for this Rider. The following sections of the policy are changed:

(1) The last sentence in sub-paragraph 5 under Changes in Existing Coverage on Page 7 is changed to "No such decrease may reduce the Specified Amount below $25,000.00."

(2) The following sub-paragraph under Changes in Existing Coverage on Page 7 is added:

   (6) The Specified Amount cannot be increased at any time after the Insured reaches the age of 85.

(3) The entire section Policy Loans on Page 11 is replaced by the following section:

**Policy Loans -** After the first policy anniversary, a loan will be granted upon the sole security and assignment of this policy to the Company. The maximum loan amount is 90% of the cash value on the date of the loan less any debt. Cash value is defined under Nonforfeiture Values on Page 14. Any debt will be deducted from the proceeds payable at the Insured's death, on maturity, or on surrender.

The Owner may allocate the policy loan among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the policy loan will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the policy loan. Accumulation value in each division equal to the policy loan allocated to each division will be transferred to the General Account and reduce the accumulation value in that division. If loan interest is not paid when due, an amount of accumulation value equal to the loan interest will also be transferred.

If the policy debt exceeds the policy's accumulation value in the General Account, the Company will transfer accumulation value equal to the excess debt from the divisions of Separate Account A to the General Account as security for the excess debt. The amount transferred will be allocated among the divisions in the same proportion that the accumulation value in each division bears to the policy's total accumulation value in all divisions of Separate Account A.

**Types of Policy Loans** - Type A and Type B - There are two (2) types of policy loans which the Company will grant to the Owner - Type A and Type B. The type of loan which the Company will grant depends upon the amount of unloaned Type A balance available at the time the loan is taken. The unloaned Type A balance is 90% of the cash value, less the threshold, and less the sum of any outstanding Type A loans as defined below. The threshold is the Guideline Single Premium for this policy at issue as defined in Section 7702 of the Internal Revenue Code of 1986 entitled "Life Insurance Contract Defined". If the Specified Amount as defined on Page 10 of this policy increases, the threshold will be increased to the threshold at issue times the ratio of the largest Specified Amount ever existing on the policy to the Initial Specified Amount. If the Specified Amount decreases, the threshold will not change.

A Type A Loan is a policy loan granted by the Company when the unloaned Type A balance before the loan is taken exceeds the loan requested.

A Type B Loan is a policy loan granted by the Company when the unloaned Type A balance before the loan is taken is less than or equal to zero.

When the unloaned Type A balance before the loan is taken exceeds zero, but is less than the loan requested, a Type A Loan equal to the unloaned Type A balance will be granted by the Company. The remainder of the requested loan will be a Type B Loan.

The Company will grant a Type A Loan first before a Type B Loan. Once a policy loan is granted, it remains a Type A or a Type B until it is repaid.

**Policy Loan Interest** - The interest charged by the Company on a policy loan depends upon the type of loan granted. On a Type A Loan the Company will charge an effective interest rate of two (2) percentage points lower than the effective interest rate charged at the time by the Company for a Type B Loan.

On a Type B Loan the Company will charge interest at the effective maximum rate of 8%, or at any lower rate established by the Company for any period during which the loan is outstanding.

Loan interest accrues on a daily basis from the date of the loan and is payable at the end of each policy year. Loan interest unpaid on a policy anniversary becomes loan principal. The Company shall provide at least 30 days written notice to the Owner (or any other party designated by the Owner to receive notice under this policy) and any assignee recorded at the Home Office of any increase in the interest rate on loans outstanding 40 or more days prior to the effective date of the increase. As to loans made during the 40 days before the effective date of the policy loan interest rate increase, the Company shall notify the Owner and any assignee at the time the loan is made.

The effective date of any increase in such interest rate shall not be less than twelve months after the effective date of the establishment of the previous rate. If the interest rate is increased, the amount of such increase shall not exceed one percent per year.

Interest accrues on a daily basis from the date of the loan and is compounded annually. Interest unpaid on a policy anniversary becomes loan principal.

**Debt** - As used in this policy, debt means the principal of any loan outstanding against this policy, plus any accrued loan interest. If the policy debt exceeds the cash value, the Company will send a notice by mail to the Owner and to the assignee, if any, at their addresses last reported to the Company. If the excess is not paid within 61 days from the date the notice is mailed, the policy will terminate without value.

**Policy Loan Repayment** - Any debt may be repaid, in whole or in part, at any time while this policy is in force. When a loan repayment is made, accumulation value securing the debt in the General Account equal to the loan repayment will be allocated among the General Account and divisions of Separate Account A using the same percentages used to allocate net premiums. Repayments will be used to reduce policy loans until fully paid in the following order:

(1) Any or all Type B Loans; then

(2) Any or all Type A Loans.

_Chief Executive Officer_

_Secretary_

Exhibit "B"


**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company
One Granite Place
PO Box 515
Concord, NH 03302-0515

Bus: 603 226-5000

July 10, 2014

Ob-Gyn Assc of Oak Ridge Profit Sha
Of Oak Ridge Pen Tr
988 Oak Ridge Tpke Ste 140
Oak Ridge, TN   37830-6919

Re: Policy: 506013141
Insured: Timothy D Gowder

Dear Policyowner,

Currently, your Life Insurance policy does not have enough value to cover the monthly expense due on July 9, 2014.  We are concerned that your policy will lapse without value on September 13, 2014 unless the required payment is made.  The minimum payment due is $8,540.18.  Should this policy lapse, you will lose the financial security and protection this insurance coverage provides you.

You are a valuable Lincoln policy owner.   Please carefully consider any decision concerning your policy. Contact your Lincoln representative listed below or a Customer Service professional today for more information about how to maintain your policy's protection.

Sincerely,

Customer Service
(800)453-8588

Home Office

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.   www.LincolnFinancial.com
The Lincoln National Life Insurance Company's Home Office is located in Fort Wayne, IN.
Policy Number : 506013141                                                                                                                    Page 1

Case 3:16-cv-00369-JRG-CCS   Document 1-1   Filed 06/23/16   Page 41 of 64   PageID #: 07/10/2014

Exhibit "C"


**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company
One Granite Place
PO Box 515
Concord, NH 03302-0515

Bus: 603 226-5000

August 9, 2014

Ob-Gyn Assc of Oak Ridge Profit Sha
Of Oak Ridge Pen Tr
988 Oak Ridge Tpke Ste 140
Oak Ridge, TN   37830-6919

Re: Policy: 506013141
Insured: Timothy D Gowder

Dear Policyowner,

Currently, your Life Insurance policy does not have enough value to cover the monthly expense due on July 9, 2014.   We are concerned that your policy will lapse without value on September 13, 2014 unless the required payment is made.   The minimum payment due is $8,540.18.   Should this policy lapse, you will lose the financial security and protection this insurance coverage provides you.

You are a valuable Lincoln policy owner.   Please carefully consider any decision concerning your policy. Contact your Lincoln representative listed below or a Customer Service professional today for more information about how to maintain your policy's protection.

Sincerely,

Customer Service
(800)453-8588

Home Office

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.   www.LincolnFinancial.com
The Lincoln National Life Insurance Company's Home Office is located in Fort Wayne, IN.

Policy Number : 506013141                                                                                                                Page 1

*00E0000064065*

Exhibit "D"


**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company
One Granite Place
PO Box 515
Concord, NH 03302-0515

Bus: 603 226-5000

September 16, 2014

Ob-Gyn Assc of Oak Ridge Profit Sha
Of Oak Ridge Pen Tr
988 Oak Ridge Tpke Ste 140
Oak Ridge, TN  37830-6919

Re: Policy: 506013141
Insured: Timothy D Gowder

Dear  Policyowner,

The payment due on 07/09/2014 to keep your Life Insurance policy active has not been received.   As the grace period has expired, your policy coverage with Lincoln National Life Insurance Company (Lincoln) is no longer in force.

You have the right to apply for reinstatement.   We encourage you to consider reinstatement by completing the enclosed application and paying the amount due of $8,540.18.   If your reinstatement application is received by 10/07/2014 and approved, your policy will be reinstated.

Should you have any questions, your Lincoln representative listed below or a customer service professional will be available to answer your questions and guide you through this process.   Whatever your decision in this matter, it has been a pleasure to be of service to you.

Sincerely,

Customer Service
(800)453-8588

Home Office

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.   www.LincolnFinancial.com
The Lincoln National Life Insurance Company's Home Office is located in Fort Wayne, IN.
Policy Number : 506013141                                                                                                                 Page 1

Case 3:16-cv-00369-JRG-CCS   Document 1-1   Filed 06/23/16   Page 45 of 64   PageID #: 51
*00E0000015043*

Exhibit "E"

JOHN T. JOHNSON, JR.
WARREN L. GOOCH
WAYNE R. KRAMER
EDWARD G. PHILLIPS
THOMAS M. HALE
JACKSON G. KRAMER
BEECHER A. BARTLETT, JR.
ROBERT W. KNOLTON
JOHN C. BURGIN, JR.
CHARLES M. FINN
ROBERT A. CRAWFORD
JOHN E. WINTERS
ROBERT L. BOWMAN
STEVEN E. KRAMER
SHANNON COLEMAN EGLE
KATE E. TUCKER
BETSY J. BECK
WILLIAM J. CARVER
GEORGE R. ARRANTS, JR.
J. MATTHEW BROTHERTON
ADAM G. RUSSELL
BRANDON L. MORROW
CAMILLE H. SANDERS
NATE L. MCMURRY

# KRAMER RAYSON LLP

──────── ATTORNEYS AT LAW ────────

POST OFFICE BOX 4459

OAK RIDGE, TENNESSEE 37831-4459

FOUNDED 1948

SPECIAL COUNSEL
LESLIE L. SHIELDS

OF COUNSEL
E. H. RAYSON
HUGH W. MORGAN
G. WILSON HORDE

OFFICES
FIRST TENNESSEE PLAZA, SUITE 2500
800 SOUTH GAY STREET
KNOXVILLE, TENNESSEE 37929
TELEPHONE 865 525-5134
TELECOPIER 865 522-5723

105 DONNER DRIVE, SUITE A
OAK RIDGE, TENNESSEE 37830
TELEPHONE 865 220-5134
TELECOPIER 865 220-5132

R.R. KRAMER (1888-1966)

November 21, 2014

## VIA CERTIFIED MAIL

Lincoln National Life Insurance Company
Customer Service–Concord
One Granite Place
Concord, NH 03301

      Re:     My Client:  Timothy D. Gowder

              Lincoln National Life Ins. Co. Individual Flexible
              Premium Variable Life Policy No.:  506013141

              Policy Owner:  Ob-Gyn Assc of Oak Ridge Profit Sharing
              Of Oak Ridge Pension Trust

              Insured:  Timothy D. Gowder

              Issuance Date of Policy:  July 9, 1996

Dear Sir/Madam:

      Your letter of October, 2014 addressed to the owner of the above said policy was only recently received and reviewed by Dr. Gowder.   In light of your apparent attempt to cancel a policy which has been in existence for over 20 years, this matter has been referred to me for response on behalf of Dr. Gowder.

      For further background explanation, the above-captioned policy was issued in 1996 on the life of Dr. Gowder, then actively practicing with the Ob-Gyn Associates of Oak Ridge. The policy was placed in the profit sharing pension trust with the owner being the OB-Gyn Associates profit sharing and pension trust. As I understand it, the premiums were paid by the trust, and in fact, all premiums were completely paid up at one point and the life policy considered as a "paid-up" policy, with the

proceeds to be payable to the designated beneficiary upon the death of Dr. Gowder. When Dr. Gowder stepped down from an active Ob-Gyn practice in 2007, that was the status of the policy as he understood it. After his retirement from such active practice, he merely received an annual report as to the cash value status of the policy, after that report had been forwarded to the policy owner.

The first time that Dr. Gowder became aware of any problem with any premium that might be due, was after closer review of your letter of October, 2014, which had been forwarded to him by the trustee of the pension plan. He states unequivocally that he had not received any prior notice of premium being due nor of any intent to cancel such policy. In fact, when be became aware of the problem contained in your letter, he contacted a representative of Lincoln National Life and discussed the situation, and was advised that if he paid the claimed premium due by a certain date, the policy would remain in force. Dr. Gowder did this and forwarded the check to Lincoln National Life along with a completed form that had been forwarded to him by your representative. This check was sent by Fed Ex and received by Lincoln National Life within the time limit expressed in your letter referred to above. For some reason, Lincoln National Life has refused to accept such check and has issued its refund of the amount sent by Dr. Gowder because it was paid on terminated policies. A copy of your refund check issued on November 3, 2014 is enclosed. Dr. Gowder has not deposited that check nor cashed it, and he does not intend to do so. If you want me to return the check to you, I will do so upon hearing further from you.

I am not aware of any further background details other than the documents that were shown to me by Dr. Gowder and of course his statement inquiry, wondering why a policy in effect for almost 20 years is suddenly terminated. Obviously Dr. Gowder does not intend to allow this unilateral cancellation, which was without his knowledge of any problem with the policy until your letter of October 2014 being turned over to him by the Ob-Gyn trustee. He immediately followed your instructions in your letter when he found out about the problem, and now you claim that the policy was already terminated (without his knowledge) and have refused to accept the amount of premium requested in your letter. I am, of course, requesting that you immediately reinstate Dr. Gowder's policy and should you refuse to do so, please be assured that a civil action will result from your cancellation which will seek the reinstatement of the life policy and payment of damages to him for the wrongful termination of his policy under the aforestated circumstances.

If you refuse to voluntarily reinstate the policy, I am requesting that you forward to me a copy of the policy itself and any and all notices that you claim were issued notifying Dr. Gowder that his policy was being terminated because of non-payment of premiums.

I am forwarding a copy of this letter to the Ob-Gyn Associates of Oak Ridge Profit Sharing and Pension Trustee, so that the trust entity may be aware of this problem.

Thank you for your cooperation, and I would appreciate hearing from you as soon as possible concerning this issue.

Yours very truly,

KRAMER RAYSON LLP

Robert W. Knolton

RWK/lrb
Enclosures
cc: Ob-Gyn Associates of Oak Ridge Profit
Sharing and Pension Trustee
Dr. Timothy D. Gowder



# Lincoln
### Financial Group®

LINCOLN NATIONAL LIFE
INSURANCE COMPANY

001674      0139308103
TIMOTHY D GOWDER
15 PRESIDENTIAL DR
OAK RIDGE TN 37830

NOV 03, 2014

CHECK NUMBER
G 0015289641

$8,540.18

IN PAYMENT OF:

506013141                                          X

REFUND OF REMITTANCE (ON TERMINATED POLICIES)
POL #506013141
ARCYR

---

DETACH BEFORE DEPOSITING

'608 (Rev 10/12)

# Lincoln
### Financial Group®

LINCOLN NATIONAL LIFE
INSURANCE COMPANY
100 NORTH GREENE STREET
GREENSBORO, NC 27401

DATE   NOV 03, 2014     CHECK NO. G 0015289641     64-1278
611

TO: BANK OF AMERICA, ATLANTA, GA

AMOUNT

PAY EIGHT THOUSAND, FIVE HUNDRED FORTY AND 18/100 --------------DOLLARS **$******8,540.18**

NOT VALID AFTER 120 DAYS

PAY TO THE
ORDER OF
TIMOTHY D GOWDER
15 PRESIDENTIAL DR
OAK RIDGE TN 37830

*Kristi J. Harkenrider*

KRISTI HARKENRIDER - ASSISTANT TREASURER
LINCOLN NATIONAL LIFE INSURANCE COMPANY

CSLC289642 VUL01 OCR

⑈0015289641⑈ ⑈061⑈1278⑈: 3299129925⑈

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Deliver
K Tucker

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

NOV 28 2014

1. Article Addressed to:

LINCOLN NATIONAL LIFE
INS. CO.
CUSTOMER SERVICE
ONE GRANITE PLACE
CONCORD, NH 03301

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7010 3090 0002 2836 2942

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-154

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $ 6.69 | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To
LINCOLN NAT'L LIFE INS. CO.
Street, Apt. No.;
or PO Box No. ONE GRANITE PLACE
City, State, ZIP+4
CONCORD, NH 03301

7010 3090 0002 2836 2942

PS Form 3800, August 2006       See Reverse for Instructions

# Exhibit "F"



**Lincoln**
Financial Group®

**You're In Charge®**

AUG 10 2015

The Lincoln National Life Insurance Company
Legal Department
Mail Stop 4326
PO Box 21008
Greensboro, NC 27420-1008

Judy D. Fawley, ACS, AIRC
Advisor, Compliance
Registered Principal
336-691-4890 (Direct Dial)
800-458-5299 x 4890 (Toll Free)
336-335-2144 (Fax)

August 7, 2015

Robert W. Knolton
Kramer Rayson LLP
Attorneys at Law
PO Box 4459
Oak Ridge, TN 37831-4459

RE:    Your Client:    Timothy D. Gowder
        Lincoln Policy #:    506013141
        Policyowner:    Ob-Gyn Assc of Oak Ridge Profit Sharing
                Of Oak Ridge Pension Trust
        Insured:    Timothy D. Gowder

Dear Mr. Knolton:

Thank you for your July 31, 2015 letter.

As explained previously, the authorization received by Lincoln was not in good order. To date, the additional information we requested to permit approval of the authorization has not been received.

In an effort to resolve this complaint, we are providing the information below regarding the policy and its termination.

This is a Flexible Premium Variable Universal Life product under which flexible premiums are permitted and the policy values and death benefit may vary with the investment experience of the funding options selected by the policy owner. It offers professionally managed investment options with a range of investment objectives and risk levels.

This type of policy has a fund account from which the monthly cost of Insurance (COI) and expense charges are deducted. For this policy, the monthly anniversary is the 9th of each month. The planned premium is placed into the fund account upon receipt and invested according to the owner's instructions. Depending on how the market performs, the fund account could be positively or negatively affected. The

www.LFG.com

Registered Representative of Lincoln Financial Distributors, Inc., a broker/dealer. Insurance products are issued by Lincoln affiliates. Principal office located at 130 N. Radnor-Chester Rd., Radnor, PA 19087-5221. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

fund account must remain sufficient to cover the monthly deductions or the policy goes into a lapse pending status and we request additional premium. If sufficient payment is not received by the end of the grace period, the policy will lapse in accordance with its terms.

Enclosed is a copy of the policy terms. Refer to the Grace Period provision on page 5. If on any monthly anniversary there is insufficient value in the policy to cover the monthly deduction, the policy provides for a 61 day grace period. The grace period begins on the day that the company sends notice to the **owner** and to the assignee, if any, that there is insufficient value to cover the monthly deductions.

The policy entered the grace period for the July 9, 2014 monthly deductions. We sent notices to the owner on July 10, 2014 and August 9, 2014 that there is insufficient value and that if payment is not received by September 13, 2014; the policy will lapse without value. Payment was not received and the policy lapsed. We sent notice of the lapse to the owner on September 16, 2014. Included with the September 16 letter was a reinstatement application. Note that the signatures of both the insured and the owner are required on the application. Enclosed are copies of the referenced correspondence.

We received Mr. Gowder's check on October 2, 2014 which is after the policy had lapsed. We also received the completed reinstatement application. The application did not include the owner's signature. We wrote to the owner on October 3, 2014 advising of the signature requirements and providing a reinstatement application. Requirements were not received and, as you know, Lincoln has been attempting to refund Mr. Gowder's payment.

Refer to the Reinstatement provision on page 6 of the enclosed policy terms which provides that the policy may be reinstated by the **owner** at any time within five years after the date of termination. Reinstatement is subject to, among other things, evidence of insurability satisfactory to the company.

In summary, this policy entered the grace period and subsequently lapsed in accordance with its terms. In accordance with policy provisions, Lincoln sent notice of the pending lapse of the policy to the owner at the address of record. We do not find a basis to offer to informally reinstate the policy. Reinstatement is subject to the terms of the policy. If the policy is reinstated, Mr. Gowder may wish to work with the current owner to change the ownership.

If you require additional policy information, absent authorization in good order, we require a valid subpoena.

Sincerely,

*Judy Fawley*

Judy D. Fawley

cc: Ob-Gyn Associates of Oak Ridge

www.LFG.com

Registered Representative of Lincoln Financial Distributors, Inc., a broker/dealer. Insurance products are issued by Lincoln affiliates. Principal office located at 130 N. Radnor-Chester Rd., Radnor, PA 19087-5221. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Exhibit "G"

# KRAMER RAYSON LLP
### ATTORNEYS AT LAW

JOHN T. JOHNSON, JR.
WARREN L. GOOCH
WAYNE R. KRAMER
EDWARD G. PHILLIPS
THOMAS M. HALE
JACKSON G. KRAMER
BEECHER A. BARTLETT, JR.
ROBERT W. KNOLTON
JOHN C. BURGIN, JR.
CHARLES M. FINN
ROBERT A. CRAWFORD
JOHN E. WINTERS
ROBERT L. BOWMAN
STEVEN E. KRAMER
SHANNON COLEMAN EGLE
KATE E. TUCKER
BETSY J. BECK
WILLIAM J. CARVER
GEORGE R. ARRANTS, JR.
ADAM G. RUSSELL
BRANDON L. MORROW
CAMILLE H. SANDERS
NATE L. MCMURRY
BRYCE E. FITZGERALD

SPECIAL COUNSEL
LESLIE L. SHIELDS

OF COUNSEL
E. H. RAYSON
G. WILSON HORDE

POST OFFICE BOX 4459
OAK RIDGE, TENNESSEE 37831-4459

FOUNDED 1948

OFFICES
FIRST TENNESSEE PLAZA, SUITE 2500
800 SOUTH GAY STREET
KNOXVILLE, TENNESSEE 37929
TELEPHONE 865 525-5134
TELECOPIER 865 522-5723

105 DONNER DRIVE, SUITE A
OAK RIDGE, TENNESSEE 37830
TELEPHONE 865 220-5134
TELECOPIER 865 220-5132

R.R. KRAMER (1888-1966)

January 14, 2016

Ms. Judy D. Fawley
The Lincoln National Life Ins. Co.
Mail Stop 4326
P. O. Box 21008
Greensboro, NC 27420-1008

Re:    My Client:        Timothy D. Gowder
        Lincoln Policy No.:    506013141
        Policy Owner:       Ob-Gyn Associates of Oak Ridge Profit Sharing
                           of Oak Ridge Pension Trust
        Insured:          Timothy D. Gowder

Dear Ms. Fawley:

This letter is in response to your letter of August 7, 2015, written to me concerning the above captioned matter. For your "ready" reference, I am enclosing a copy of your letter of August 7, 2015. Also, for further reference, I am enclosing a copy of your letter of September 16, 2014, sent to the "Owner" of the policy concerning reinstatement of the policy insuring the life of Dr. Gowder. Dr. Gowder, as the insured, did not receive the letter of September 16, 2014, until only recently, after he had attempted to forward himself, as the insured, the necessary premium to keep the policy in force. That check was returned by Lincoln National Life Insurance Company.

Pursuant to the instructions of Lincoln National Life Insurance Company contained in the aforestated letters, I am forwarding to you the following documents:

1.      Reinstatement Questionnaire completed and signed by the "Owner" of the policy and by the insured, Dr. Gowder; and,

2.      Check issued by the "Owner" of the above referenced policy, payable to Lincoln National Life Insurance Company in the amount of $8,540.18, which represents the required amount due with the Reinstatement Questionnaire.

I would appreciate hearing from you when the policy has been reinstated, along with Lincoln National's appropriate form to change ownership of Policy No. 506013141.

Thank you for your assistance, and should you have any questions of me concerning this Reinstatement Questionnaire, please do not hesitate to let me know.

Yours very truly,

KRAMER RAYSON LLP

Robert W. Knolton

RWK:dt
Enclosures
cc:     Timothy D. Gowder, M.D.
        Ob·Gyn Associates, P.C.

Exhibit "H"


Financial Group®

February 24, 2016

Lincoln Financial Group
One Granite Place
PO Box 515
Concord, NH 03302

bus  603 226 5000

Timothy D Gowder
15 Presidential Dr
Oak Ridge, TN  37830

RE: 506013141
Insured:  Timothy D Gowder

Dear Mr. Gowder,

Thank you for your Reinstatement Application to The Lincoln National Life Insurance Company. After thoroughly reviewing the file information, request for reinstatement has been declined due to your medical history in the medical records obtained from Dr. Lawson.  Regretfully, this history falls outside acceptable underwriting guidelines for consideration of reinstatement at the same Standard Non-tobacco premium rate class originally issued for this policy.

You have the right to know additional details regarding our decision. However, you must write to us and request this information. Your request must be received within ninety (90) days of the mailing of this letter, and we will respond within twenty-one (21) business days. Medical information will only be released either directly to you or to a licensed physician, whichever you prefer. If you write to us to release medical information to your doctor, please be sure you indicate the name and address of a licensed physician to whom you wish us to respond.

Also, if you think of any of the item(s) of personal information in our files are wrong, you may write to us to correct, amend or delete it. We will respond within thirty (30) business days. If we agree, we will tell any person to whom we may have divulged the initial information during the last two (2) years. We will also tell any insurance support firm to whom we have disclosed it or who furnished it to us.

If you do not agree, you may file a brief statement setting forth what you think is correct, relevant, or fair and why you do not agree with our decision not to correct, amend or delete it. Your statement will remain in your file and will become part of any future disclosure. In addition, copies of your statement will be sent to any person of insurance support firm to whom the initial information was disclosed.

Sincerely,

*Annette Gray*

**Annette Gray, FALU, CEBS, ALMI, ACS**
**Underwriter**
**TCXN GI/SI Underwriting & New Business**
Lincoln Financial Group
100 N. Greene St
Greensboro, NC 27401
Toll Free Number:  866-227-5825  ext: 3129
Direct Line:  336-691-3129
Fax:  800-862-1645
Email:  annette.gray@lfg.com

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Exhibit "I"



**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company
One Granite Place
P.O. Box 515
Concord, NH 03302-0515

February 29, 2016

Ob-Gyn Assc of Oak Ridge Profit Sha
Of Oak Ridge Pen Tr
988 Oak Ridge Tpke Ste 140
Oak Ridge, TN 37830-6919

Policy: 506013141
Insured: Timothy D Gowder

Dear Policyowner:

This letter is in response to your request for information on this policy.

We have received $8540.18.

Your policy has been Declined by our underwriting department.

| | |
|---|---|
| Type of Coverage  : | Variable Universal Life |
| Base Plan : | Ensemble II |
| Base Plan Coverage : | $500,000.00 |
| Status : | Declined |

We will be sending a refund check for $8540.18 under separate cover.

We are committed to providing you with quality customer service.   If you have any questions or comments, please contact Customer Service at 800-487-1485 between the hours of 8:00 a.m. and 6:00 p.m. Eastern Time, Monday through Friday, or contact your financial representative.

Sincerely,

Arlene (Arnie) Cyr
Customer Service Professional
Contract Change & Reinstatements
Life Client Solutions
Partner Solutions for Life, Claims & Distribution
Lincoln Financial Group
1 Granite Place
Concord, NH 03302

To access your information, visit www.LincolnFinancial.com

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates. www.LincolnFinancial.com*
*The Lincoln National Life Insurance Company is domiciled in Fort Wayne, IN.*

*Variable products are sold by prospectus, which contains the investment objectives, risks, and charges and expenses of the variable product and its underlying investment options. Read carefully.*

LCN-1228467-061615 VUL

  *Clerk's Copy*

## IN THE SEVENTH JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
## CHANCERY DIVISION

OB-GYN ASSOCIATES OF        )
OAK RIDGE, P.C., and          )
and TIMOTHY D. GOWDER, M.D.,  )
                            )
     Plaintiffs,            )
                            )     No.: **16CH8036**
v.                         )
                            )
THE LINCOLN NATIONAL LIFE    )
INSURANCE COMPANY,        )
                            )
     Defendant.           )

*(right margin, vertical:)* FILED 2016 MAY 19 PM 2 55 STEVE R. QUEENER CLERK AND MASTER

**To The Above-Named Defendant:** **The Lincoln National Life Insurance Company**
                                       **c/o Commissioner of TN Dept. of Commerce & Insurance**
                                       **(T.C.A. §§ 56-2-501, *et seq.*)**
                                       **Attn.: Service of Process**
                                       **500 James Robertson Parkway**
                                       **David Crockett Tower**
                                       **Nashville, TN 37243-0565**

     You are hereby summoned and required to serve upon ROBERT W. KNOLTON, Plaintiff's Attorney, whose address is P.O. Box 4459, Oak Ridge, Tennessee, 37831, an Answer to the Complaint/Warrant herewith served upon you within thirty (30) days after service of this Summons and Complaint/Warrant upon you, exclusive of the day of service. If you fail to do so, Judgment by default can be taken against you for the relief demanded in the Complaint/Warrant.

     **ISSUED** and attested this **19** day of ___**May**___, 2016.

                               _Steve R. Queener_____
                               **CLERK**

                               _Tammy Hazel_____
                               **DEPUTY CLERK**

# NOTICE

**To The Party Defendant: Lincoln National Life Insurance Company**

Tennessee law provides a **Ten Thousand Dollar ($10,000.00) personal property exemption** from execution or seizure to satisfy a Judgment. If a Judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the Judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**TO THE PROCESS SERVER:**     **Defendant, The Lincoln National Life Insurance Company**
**c/o Commissioner of TN Dept. of Commerce & Insurance**
**Serve Defendant per attached Affidavit at:**
**Lincoln National Life Insurance Company**
**1300 South Clinton Street**
**Fort Wayne, IN 46802**

## RETURN

I received this Summons on the _____ day of _____, 2016.

I hereby certify that on the _____ day of _____, 2016, I:

[   ] **served** this Summons and a Complaint/Warrant on Defendant _____, in the following manner:

_____

[   ] **failed** to serve this Summons within thirty (30) days after its issuance because:

_____

_____
**PROCESS SERVER**

STEVE R. QUEENER
CLERK AND MASTER

2016 JUN 6 AM 10 48
FILED



**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

May 25, 2016

Lincoln National Life Insurance Company             Certified Mail
2908 Poston Avenue, % C S C                          Return Receipt Requested
Nashville, TN  37203                                 7015 0640 0007 0043 7147
NAIC # 65676                                         Cashier # 26003

Re:    Ob-Gyn Associates Of Oak Ridge P.C., Et A   V.   Lincoln National Life Insurance
Company
       Docket # 16CH8036

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served May 24, 2016, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Anderson County
    100 N. Main Street, Rm 308
    Clinton, Tn  37716

